STATE OF MAINE                                     UCD
PISCATAQUIS, ss.                              DOVER-FOXCROFT
                                             PISCDCR-16-447


                         STATE OF MAINE
                                v.
                      MATTHEW S. HAYNES

                             ORDER

On 8/21/17 the hearing took place on the Defendant's 2/6/17 *motion to suppress*. Present were ADA Trainor for the State, the Defendant, and Attorney Glazier for the Defense. At the conclusion of the hearing and arguments of counsel, the motion was taken under advisement.

Columbus Day in 2016 was celebrated on 10/10/16. For this autumn day, Maine Game Wardens Pollard and Sergeant Annis decided to bring their stuffed partridge decoy along with them into the roads above Kokadjo to see what sort of mischief might be out and about in the backwoods – for partridge season was upon us. They placed the decoy in what they thought would be an attractive spot on of the side of a woods road, they secreted their truck, and each hid in a different position where each could clearly see in both directions of the immediate woods and road area of the fake partridge. Part of their plan was that Pollard would keep his eye on the driver of any vehicle, and Annis would keep his eye on any passenger in the vehicle.

After a time a man and woman drove by and stopped by the partridge. The man was driving, he got out without any gun, he strolled over to get a closer look at the partridge. He chuckled, got back into his vehicle, and was heard to observe to the woman, *must be a warden in the woods*. Then he continued on his way down the road. He had traveled just a bit when a vehicle approached him coming in the other direction. Both vehicles stopped, drivers' windows were lowered and a conversation between drivers took place. The couple then drove off. The approaching vehicle continued on towards the grassy spot where the fake partridge stood like a statue. Just after it passed the partridge the vehicle stopped. The driver and the passenger each got out of their respective doors, each with a shotgun.

Not wanting to risk this bundle of feathers being blown into kingdom come, each game warden stepped out from hiding, each stated, *Game warden don't shoot the partridge!* As planned Warden Polland then came up to the driver Matthew Haynes and Warden Sergeant Annis came up to the passenger.

For each of the warden's safety and for the safety of all present it was necessary for each warden to immediately make sure that no loaded shotguns were in play. Warden Sergeant Annis took the conventional path of ordering the passenger to, *Make the gun safe.* The passenger did and Sergeant Annis learned that the gun was loaded and it was made safe. Warden Polland took perhaps a more unconventional path as he approached the Defendant by simply asking, Why did you load the gun in your truck? In response Mr. Haynes said that he did not want to scare the bird. In this fashion Warden Polland learned that the gun was loaded and it was made safe. So each warden: had seen "his" man get out of the vehicle with a shotgun; had not seen "his" man load his shotgun outside of the truck; took immediate steps to make sure that the shotgun of "his" man was made safe. While perhaps it could be argued that Warden Polland was somewhat sneaky in how he went about making sure that Mr. Haynes' shotgun was made safe, such does not run afoul of any Miranda rights of the Defendant. The Court further finds that the Defendant was not in custody at the time this statement was made. Accordingly this statement (which is the only one the Defendant seeks to suppress) is not suppressed. In addition

PISCATAQUIS JUD CTR
AUG 28 '17 PM4:08

1

there is no sufficient basis to suppress any of the 10/10/16 statements of the Defendant that were testified to at the hearing on the motion to suppress. Thus part #3 of the 2/6/17 motion is denied.

In order of events Warden Polland and Warden Sargeant Annis then each administerd field tests to the Defendant – first Polland then Annis. When Polland walked up to the Defendant he knew that: it was partridge hunting season; he had been driving the truck; he had stopped the truck just past the decoy partridge; he had gotten out of the truck with a shotgun. Polland then learned that the shotgun was indeed loaded, and been loaded when he got out of the vehicle. Polland also observed at the outset that the Defendant's eyes were glassy and red, and that there was a strong odor of intoxicants coming from the Defendant's mouth. Then Polland learned that the Defendant had been drinking beer earlier this same day. The lesson of State v. Webster 2000 ME 115, 754 A.2d 976 couldn't be clearer, the wardens would be *careless* if field sobriety tests were not administered to determine Mr. Haynes' sobriety and the risks he might pose to himself and others as he was driving and he had a loaded shotgun.

Warden Polland administered: the HGN test (he observed 2 out of 6 clues); the walk and turn test (he observed only 1 clue); the one legged stand test (he observed only 1 clue). These three tests are termed "standardized" tests. He then talked to Warden Sargeant Annis and told him that based upon these tests he did not believe he had probable cause to have the Defendant take an intoxilizer test; however he told Annis that he still believed from all of his observations that the Defendant was under the influence. So Annis came up to the Defendant. He saw the Defendant's eyes as very red and very glazed, and he smelled the strong order of intoxicants coming from the Defendant. Annis also knew that the Defendant was driving and that he had gotten out of the truck with a loaded shotgun.

Warden Sargeant Annis then admistered the only three field tests that he has administered over about 20 years of being a warden. These three tests are not "standardized." He admistered: the alphabet test, he was supposed to recite from just *B* to *N* (the Defendant went past *N* all the way to *R* – so he failed); the backwards number test, he was supposed to count from 46 to 19 (the Defendant counted down to 13 and beyond – so he failed); the finger dexterity test, he was supposed to do three rounds (while he performed the first two rounds fine, he simply stopped after doing the first two and never did perform the third round – so he failed). From all of his observations and the three field tests he administered Annis did conclude that there was probable cause to have the Defendant take an intoxilzer test.

Utilizing the reasoning of the Daniel Webster case Warden Polland and then Warden Annis each had a sufficient basis to each administer field sobriety tests. [For the purposes of this motion to supress this Court does not find any significance as to whether a test is "standardized" or not.] Thus part #1 of the 2/6/17 motion is denied as to the tests administered by Polland and as to the tests administered by Annis.

The State concedes that had Annis made no observations and administerd no field tests, there would have been no probable cause to have the Defendant take an intoxilizer test. However it may well be that Polland's still firm belief from all of his observations (despite the three field test results), under State v. Webster there would have been a sufficient basis for the intoxilizer test had Polland nonetheless requested the Defendant to take it. But this Court need not reach that issue because this Court finds and concludes that there was a sufficient basis for the conclusion of Warden Sargeant Annis from his own observations and his three field tests, that there was probable cause to have the Defendant take an intoxilizer test. These two wardens acted as a team that day, and it was acting as a team that: Warden Polland, Warden Sargeant Annis, the Defendant, his passenger, the warden truck, and the Defendant's truck all wound up at the Greenville Police station later for the intoxilizer tests. Again utilizing the reasoning of the

2

Daniel Webster case there was probable cause to have the Defendant take the intoxilizer test. Thus part #2 of the 2/6/17 motion is denied as to the intoxilizer test results.

The Defendant's 2/6/17 *motion to suppress* is denied in all respects.

8/28/17

Kevin L. Stitham
Judge UCD